IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESNIAK & ASSOCIATES, INC.          *

          Plaintiff          *

v.          *          Case No: JFM 02 CV3305

VIEW SYSTEMS, INC.          *

          Defendant          *

*    *    *    *    *    *    *    *    *    *    *    *

## MOTION FOR SUMMARY JUDGMENT

The Plaintiff/Counter-Defendant, Lesniak & Associates, Inc. ("Lesniak"), by its undersigned attorneys, files the following Motion For Summary Judgment and combined memorandum in support thereof. As grounds therefore, Lesniak states as follows:

### I.STATEMENT OF UNDISPUTED FACTS

### The 1999 Agreement

This matter arises from a pattern of habitual non-payment by the Defendant, View Systems, Inc. ("View"). In March 1999, View hired Lesniak by to serve as a consultant. Than p. 35, 56-7.[1] In July 1999, the parties entered into a written contract regarding View's consulting activities (the "1999 Agreement"). Exhibit A. Under the terms of the 1999 Agreement, Lesniak was to be paid $4,000.00 per month. Id. Lesniak was also to be issued stock and options and to be given a bonus at the end of the year. Id. The 1999 Agreement contained a separate provision for commissions on sales generated by Lesniak. Id. The 1999 Agreement was signed by View's general counsel, Andrew Jiranek, and contains an integration clause that confirms that the terms

---

[1] Lesniak has begun the deposition of Gunther Than, the corporate designee and CEO of View. References to his deposition transcript designated as "Than p. __".

View has consistently failed to honor the 1999 Agreement. As a result of these difficulties the parties failed to pay Lesniak the money owed to him under the 1999 Agreement.[2]  Than p. 54-5, 69-71.  View similarly failed to issue Lesniak the shares owed to him.  Than p. 54-5.  Indeed, View borrowed money from Lesniak more than once.  Than p. 68-9.  Lesniak also obtained additional investors for View.  Than p. 69.

### The 2001 Agreement

View consistently failed to pay Lesniak the money and stock owed to it.  View wanted Lesniak to continue to work for it, but Lesniak was unwilling to continue work without a formal agreement regarding outstanding compensation. Lesniak ¶ 7.  As such, the parties entered into a subsequent agreement on March 19, 2001 (the "2001 Agreement").  Exhibit B.  View's Answers to Interrogatories confirm that "the parties entered a letter agreement of March 19, 2001 in an attempt to settle issues relating to compensation."  Answer to Interrogatory No. 10.

The 2001 Agreement is a plainly worded two page document which Than reviewed prior to signing on behalf of View.  Exhibit B, Than p. 49-50.  The 2001 Agreement sets forth, by year, the outstanding money and stock owed to Lesniak by View.  Exhibit B. The 2001 Agreement also sets forth the parties' agreement for compensation going forward.  Exhibit B. Than signed the 2001 Agreement on behalf of View.  Exhibit B; Than p. 46.

### View Admits That It Failed To Honor The 2001 Agreement

Despite the 2001 Agreement, View continued to fail to pay Lesniak the money owed to it or to issue to Lesniak the stock.  Than admitted at deposition that View owes Lesniak the stock set forth in the 2001 Agreement and in the Complaint.  Than p. 54-5.  Than further admits that

---

[2] View also failed to pay another contractor, Charles Baker, under its agreement with him, resulting in a lawsuit in Howard County Circuit Court, Civil Case No: 13-C-01-48056 CN, which View settled before trial.  View failed to pay its former attorneys, Gordon Feinblatt Rothman Hoffberger & Hollander between $50,000 and $100,000.  Than, p. 13. View has now failed to pay its attorney in this case, resulting in a Motion for Leave to Withdraw that the court recently granted.

<u>View owes Lesniak money</u>, although he now claims there is a dispute regarding the amount owed. <u>Id.</u> At the close of his deposition, Than again admitted that he owes Lesniak the money and shares alleged. <u>"Payroll-wise I signed some documents where I owe the guy some money and I owe him shares."</u> Than p. 77.

### The Counterclaim

View has now filed a Counterclaim against Lesniak in which it asserts a claim for breach of contract against Lesniak. The Counterclaim asserts a single ground:

> In particular, Plaintiff promised but failed to develop business opportunities with ADT, a major market for security systems. The lost business opportunity caused damages to Defendant estimated at $3 million.

Counterclaim ¶ 24. The Counterclaim is directly refuted by the 1999 Agreement, which contains an "entire agreement" clause and makes no mention of any requirement that Lesniak develop business opportunities with ADT. Exhibit A. At deposition, Than confirmed that this alleged contractual obligation was based on oral promises by Lesniak that were made prior to the 1999 Agreement which contains the integration clause. Than p. 22-25.

### II. <u>ARGUMENT</u>

#### 1.  Applicable Law

##### a.  Summary Judgment

In responding to a motion for summary judgment, a party must "identify with particularity the material facts that are disputed." Md. R. 2-501(b). Form denials, which do not show facts in detail and with precision, are insufficient to defeat summary judgment. <u>Frush v. Brooks</u>, 204 Md. 315, 104 A.2d 624 (1954), as are mere allegations in pleadings. <u>Vanhook v. Merchants Mut. Ins. Co.</u>, 22 Md. App. 22, 321 A.2d 540 (1974). Facts proffered in opposition to a motion for summary judgment must be admissible. <u>See</u>, <u>e.g.</u>, <u>Shaffer v. Lohr</u>, 264 Md. 397,

287 A.2d 42 (1972).  Evidentiary facts, not mere conclusions, are required, and such facts must

be "full, certain and exact."  <u>Hill v. Lewis</u>, 21 Md. App. 121, 318 A.2d 850 (1974).

### b.  Objective Law Of Contracts

The objective law of contracts has been a fundamental part of Maryland law for more

than a century.

> Maryland has long adhered to the law of objective interpretation of contracts. *Auction & Estate Representatives v. Ashton,* 354 Md. 333, 340, 731 A.2d 441, 444 (1999); *Calomiris v. Woods,* 353 Md. 425, 435, 727 A.2d 358, 363, (1999); *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298, 304; (1996); *State v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991). The clear and unambiguous language of an agreement will not give way to what a party thought the agreement meant or was intended to mean. *Auction & Estate Representatives,* 354 Md. at 341, 731 A.2d at 445; *Adloo,* 344 Md. at 266, 686 A.2d at 304; *GMAC v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Board of Trustees v. Sherman,* 280 Md. 373, 380, 373 A.2d 626, 629 (1977).

> Further, "[i]n the interpretation of written contracts it is the duty of courts to ascertain, if possible, the intention of the parties, as manifested by the terms of the instrument. If the intention ... is plainly manifest upon the face of the instrument there is no room for interpretation...." *Maryland Coal Co. v. Cumberland & Pennsylvania Railroad Co.*, 41 Md. 343, 352 (1875).

<u>County Comm. of Charles County v. St. Charles Assoc. Ltd. P'ship</u>, 366Md. 426, 444-45 (2001).

Application of these principles to the straightforward contracts at issue is simple.

### c.  Damages For Failure To Issue Stock

The proper method for calculating damages when stock has been wrongfully not issued, sold

or converted was established nearly one hundred years ago by the Supreme Court in <u>Galigher v.

Jones</u>, 129 U.S. 193 (1889).  In that case a stockbroker sold certain stock held by the customer

without the customer's authorization.  The court noted that:

> The measure of damages in stock transactions of this kind is the highest intermediate value reached by the stock between the time of the wrongful act complained of and a reasonable time thereafter to allow the party injured to place himself in the position he would have been in had his rights not been violated.

Id. at 200.  In reaching its conclusion in Galigher, the Supreme Court noted that the measure of damages is appropriate because of the fluctuating value of stock.

Since the decision in Galigher, the so-called "New York Rule" has been expressly extended to include failure to issue stock due under contracts. Schultz v. Commodities Future Trading Commission, 516 F.2d 136 (2nd Cir. 1983) (adopting rule enunciated Galigher and noting applicability to failure to issue cases).

The New York Rule was expressly adopted in Maryland in Fisher v. Dinneen, 161 Md. 605, 158 A. 9 (1932).  While the Maryland courts have not considered the extension of the New York Rule to failure to issue cases, the Court of Appeals has held that employees who are to be paid in stock that subsequently is not issued are entitled to the market value of the stock. Challenge Clothes Corp. v. Polski, 181 Md. 590, 31 A.2d 309 (1943).  The court in Challenge Clothes, noted that the price to be applied is the price at the specified time for issuance.

Because the 2001 Agreement in this case did not specify a date certain for issuance of the stock, the law implies a "reasonable time" for performance.  See e.g., Anne Arundel Co. v. Crofton Corp, 286 Md. 666, 673, 410 A.2d 228 (1980) ("In the absence of an express time for performance, a reasonable time will be implied.").  Moreover, Courts recognize that some period of time after the wrongful act is absolutely required to allow the wronged party time to evaluate the situation and determine what to do.  See e.g., Caballero v. Anselmo, 759 F.Supp 144, 149 (S.D.N.Y. 1991), quoting, Gelb v. Zimet Brothers, Inc., 228 N.Y.S.2d 111(1962).

Under both the New York Rule and the Challenge Court holding with an implied time for performance, Lesniak is entitled to the highest intermediate price of the stock between the date of the contract (March 19, 2001) and the date when it became clear that View had breached its agreement to issue the stock some time at the beginning of 2002.  Lesniak ¶ 9.

## 2.  Lesniak Is Entitled To Judgment As A Matter Of Law Regarding Its Claims.
### a.  The 2001 Agreement Is Unambiguous.

There is no reasonable dispute that the 2001 Agreement is absolutely unambiguous.  The Agreement is two pages long and written in plain language.  Exhibit B.  The Agreement clearly states that it is an agreement by View of the amounts owed to Lesniak for past services and regarding compensation going forward.  Id.  The 2001 Agreement states:

> Per our discussion, I have outlined compensation for the years 1999-2000 and have identified the means by which this compensation should be reimbursed. Also included is my agreement for 2001.  Please review these documents and authorize at the bottom of page 2.

Id.  Than was presented with and signed the 2001 Agreement.  Id.

View, through Than, now makes the brazen assertion that its signature only relates to the 2001 compensation clause in the 2001 Agreement and that it does not relate to the rest of the

document. Than p. 44-50. While this argument is certainly convenient, it is ridiculous. No reasonable person reviewing the 2001 Agreement could believe that the agreement and the accompanying signature related only to the 2001 compensation clause. The document specifically states that it outlines outstanding compensation and identifies the means for payment of those amounts. The document continues to instruct Than to sign and authorize the payment.

Payment of the outstanding compensation was a fundamental issue to Lesniak in agreeing to continue to work for View in 2001. Lesniak ¶ 7, View Answer to Interrogatory No. 10. As set forth above, View had consistently defaulted on its obligations to Lesniak over the two preceding years. As such, Lesniak refused to proceed without an agreement by View of the outstanding monies and stock and payment. Lesniak ¶ 7. View's position now that the 2001 Agreement is not an acknowledgement of the monies and stock owed and an agreement to pay those monies is baseless. Under the objective law of contracts, the court need not consider Than's nonsensical interpretation of the 2001 Agreement. The Agreement says what it says, and means what it says.

**b. View Admits That It Breached The 2001 Agreement.**

As established by Exhibit A and Exhibit B, the parties entered into contracts under which the Defendant agreed to pay the Plaintiff for consulting services and to reimburse the Plaintiff for its expenses. As established by Exhibit B and as confirmed by Than at his deposition, View failed to issue to the Plaintiff 396,500 shares of stock that are due to it. As further established by Exhibit B View failed to pay the Plaintiff $160,013.19 in cash.[3]   As a result of View's breaches of the contract, Lesniak has been deprived of the $160,013.19 in cash due to it and has been damaged in that amount. Further, Lesniak has been damaged by the Defendant's wrongful

---

[3] At deposition View admitted that it owed Lesniak money but claimed there was a dispute as to the amount. The 2001 Agreement is unambiguous as to the amount owed and Than's belated claim of a dispute must be rejected.

refusal to issue the stock required under the contract. The reasonable value of the 396,500 shares is $433,771.00.[4] As such, Lesniak's total damages are $593,784.19, and judgment should be entered in that amount in favor of Lesniak.

### 3. Lesniak Is Entitled To Judgment As A Matter Of Law Regarding The Counterclaim.

Lesniak is also entitled to summary judgment on View's Counterclaim.

#### a. Contract Claims Must Identify Elements Of Contract And Breach

A "pleader must set forth 'the prima facie elements of the claim in such a manner as to fairly apprise the adverse party of the action against him.'" Mylan Laboratories v. Akzo, 770 F. Supp. 1053, 1060 (D. Md. 1991) (quoting Waterfront Guard Association v. Amstar, 363 F. Supp. 1026, 1030 (D. Md. 1973). The pleading requirements established by the Federal Rules cannot be satisfied by making conclusory assertions. As noted in National Mortgage Warehouse, LLC v. Trikeriotis, 201 F. Supp.2d 499, 501-2 (D. Md. 2002), when "the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. (Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994); Faulkner Adver., Inc. v. Nissan Motor Corp., 945 F.2d 694, 95 (4th Cir. 1991) ("Self-serving, inaccurate legal conclusions cannot rescue a factually deficient complaint."))." Consequently, unless View has alleged facts supporting a viable cause of action and has produced admissible evidence to support each of those facts, summary judgment must be granted on the Counterclaim.

In order to assert a claim for breach of contract, a plaintiff must allege the terms of the contract and must allege that the defendant committed a material breach of the agreement.

---

[4] Lesniak is entitled to the highest intermediate value between March 19, 2001 and the time that he stopped working for View in 2002. The market for View stock reached a post-March 19, 2001 high of $1.21 per share on October 9, 2001. Exhibit D; Lesniak ¶ 8. As such, Lesniak is entitled to $1.21 per share for the outstanding shares.

When pleading a breach of contract claim in federal court, "all of the elements of a contract action must be stated." Waterfront Guard Association v. Amstar Corp., 363 F. Supp 1026, 1030 (D. Md. 1973). "One such element, that the defendant has not performed his obligations under the contract, specifying the nature of the obligation – is critical . . ." Id. Thus, if the Complaint fails "to set forth a critical element of a [contract] claim, namely an obligation that [the defendant] failed to perform, [the defendant's] motion to dismiss, pursuant to Rule 12(b)(6) must be sustained." Id. at 1030-31. In the context of summary judgment, not only must the pleading requirements be met, each element must also be supported with sufficient admissible evidence to allow a reasonable jury to find in its favor. Fed. R. 56.

Here, View has failed to identify what contractual obligation Lesniak supposedly violated or failed to perform. All View has alleged is that Lesniak failed to "develop business opportunities with ADT". Counterclaim ¶ 24. View does not, and cannot, describe any contractual basis for the claimed duty of Lesniak to specifically "develop business opportunities with ADT" because the contracts do not contain any such requirement. Because View cannot identify any contractual obligation to support its claimed breach, the Counterclaim fails.

### b.    The Counterclaim Is Refuted By The Written Contracts

Second, as set forth above, the claimed breach is directly contrary to the written contracts between the parties. Nowhere in either of the contracts between the parties did Lesniak guarantee any specific sales or level of sales. Exhibits A & B. Moreover, the fact that View entered into the 2001 Agreement, which specifically acknowledges that the claimed cash and stock is owed to Lesniak, precludes View from attempting to avoid these obligations based on claims for breaches by Lesniak committed prior to March 19, 2001.

8

Than specifically testified that the 2001 Agreement was a new contract between the parties and that the 1999 Agreement had lapsed months prior to the execution of the 2001 Agreement. Than p. 44. The 2001 Agreement unequivocally acknowledges that View owed Lesniak the amounts claimed for his services in 1999 and 2000. Exhibit B. As such, View cannot now claim that breaches of the 1999 Agreement preclude payment of the amounts agreed to in the 2001 Agreement. Than further admitted that the alleged breaches by Lesniak were based upon statements made prior to the 1999 Agreement. Than p. 23-4. The 1999 Agreement contains an integration clause that precludes View from asserting such claims. Exhibit A. As such, even if the 2001 Agreement did not preclude View's claims, the integration clause would.

### c.  There Is No Evidence To Support The Claimed Breach

Third, the alleged breach claimed by View is a failure of Lesniak to "develop business opportunities with ADT". Counterclaim ¶ 24. Than initially claimed in his deposition that the basis for View's claim are comments allegedly made to him by an individual named Doug Florence, who used to work at ADT, and by an unnamed individual at another company. Than p. 28-34. Than admitted that Mr. Florence was neither an officer or director of ADT and that he had no knowledge of what Mr. Florence's position was with ADT at the time of his alleged comment. Id. Than could not date the alleged comment. Id. Than further admitted that he has no basis for asserting that Florence had any authority to speak for ADT when the alleged statement was made. Than p. 33.

Upon further questioning, Than admitted that the sole basis for View's claim that Lesniak allegedly failed to develop business opportunities with ADT was that "the sales never came." Than p. 64-5. This assertion is entirely insufficient to support a claim for breach by Lesniak. The 2001 Agreement is not conditional upon Lesniak achieving any specific sales or

level of sales. As such, View cannot avoid its obligation by claiming that Lesniak failed to achieve a specific sale or level of sales. Exhibit B.

Similarly, Than admitted that in late 1999 or early 2000 Lesniak in fact made introductions between View and ADT. Than p. 28. Than further acknowledged that Lesniak's connections with ADT were based upon Lesniak's former employment with ADT, employment that View and Than have repeatedly acknowledged in forms filed under oath with the S.E.C. Exhibit C; Than p. 31-2. Than admitted that he and View believed that Lesniak put in tremendous effort throughout his tenure with View. Than p. 64-5. Than admitted that the sole "problem" with Lesniak was that "[t]he sales never came." Id. Than acknowledged, however, that the sales efforts of View were hampered by View's consistent financial troubles. Than p. 68-70. In sum, there is simply no evidence to support a claim that Lesniak breached the 2001 Agreement or, for that matter, the 1999 Agreement.

### E. Than Admits That He Cannot Show Damages With Any Certainty

Fifth, View has no evidence from which it can show damages with any degree of certainty.

> In this State three rules are followed which limit the recovery of unrealized profits: (1) a plaintiff must show that a breach by the defendant was the cause of the loss; (2) damages may not be awarded unless, when the contract was executed, the defendant could have reasonably foreseen that a loss of profits would be a probable result of a breach; and (3) **lost profits may not be recovered unless they can be proved with "reasonable certainty"** . . . .

Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc., 283 Md. 296, 389 A.2d 887 (1978)(emphasis added). View cannot prove any of these three elements required to recover lost profits.

Asked regarding the basis for the Three Million Dollar damage claim, Than failed to respond with any evidence to support the damaged claimed. Than p. 72. Later, Than admitted "I don't know how much damage there really is done." Than p. 76. View has not designated any experts in this case and its corporate designee (Than) has testified that View has no evidence from which View could prove damages with any degree of certainty. As such, View's counterclaim fails as a matter of law for lack of any admissible proof of damages.

**WHEREFORE**, the Plaintiff/Counter-Defendant, Lesniak & Associates, Inc., requests that the court grant it summary judgment on the complaint in the total amount of $593,784.19, plus prejudgment interest from March 19, 2001 at the legal rate of 6%, plus costs of this action.

*/s/ Jonathan Ruckdeschel*
Mark M. Dumler, Bar No.: 07893
Jonathan Ruckdeschel, Bar No.: 25015
Parker, Dumler & Kiely, LLP
36 South Charles Street, Suite 2200
Baltimore, Maryland 21201
(410) 625-9330

Counsel Lesniak & Associates, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2003, a copy of the foregoing Motion was served via first class mail, postage prepaid, upon David Polikoff, Registered Agent for View Systems, Inc., at 233 E. Redwood Street, Baltimore, Maryland 21202.

*/s/ Jonathan Ruckdeschel*
Mark M. Dumler
Jonathan Ruckdeschel

11