IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Lesniak & Associates, Inc.** * | | |
| Plaintiff * | | Case No.: JFM 02 CV 3305 |
| * | | |
| v. * | | |
| * | | |
| **View Systems, Inc.** * | | |
| Defendant * | | |
| * | | |
| * | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant/counter-plaintiff, View Systems, Inc., through its undersigned attorney, files this opposition to plaintiff/counter-defendant Lesniak & Associates, Inc's Motion for Summary Judgment and states as follows:

**Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides the standard by which a Motion for Summary Judgment can be granted, namely "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." For the simple reason that this case is fraught with material facts in dispute, the summary judgment motion must be denied.

**Summary Statement of Facts**

In March 1999, defendant View Systems, Inc. ("View" or "View Systems") entered an agreement with Lesniak & Associates, LLC ("Lesniak") in which Lesniak would provide "Sales, Marketing, Management Consulting and Business Development Services" starting June 1st of the same year. Exhibit A – "1999 Agreement". The relationship went downhill from there.

Not too long into the arrangement, it became clear that Lesniak was failing to produce in any substantial way under the agreement, yet Lesniak continued to press View for payment for more work. In March of 2001, the parties entered another letter agreement – the extent of which and the terms of which are sharply disputed in this action. Exhibit B – "2001 Agreement". Gunther Than, then President and CEO of View Systems, signed the "2001 Agreement" with the understanding that the essence of the agreement was contained on the lower half of the second page of the document and titled "2001 Agreement." Exhibit C – Excerpts of Deposition of Gunther Than.[1] Indeed, previous to this 2001 agreement and contemporaneous to this 2001 agreement, Lesniak had made a number of efforts to lump all the issues relating to prior years' compensation into one package, but Than refused each and every time. Than told Lesniak numerous times that he preferred to deal first with the year 2001 going forward, and deal with the other compensation issues separately. Exhibit D – Email from Lesniak to Than dated 3/1/2001. It was with this ongoing understanding that Than quite reasonably believed that the "2001 Agreement" was indeed for the year 2001. Regardless, Lesniak's failures to perform continued.

Finally, in August of 2001, the View Systems Board of Directors ordered that sales personnel be compensated on a commission-only basis and a letter dated August 14, 2001 was sent to Lesniak to that effect. Exhibit E – Letter to Lesniak. Despite initial disagreement with the letter, Lesniak continued to work for View Systems well into 2002.

---

[1] Consistent with Plaintiff's Motion, references to the deposition transcript will be designated by "Than p.___"

## ARGUMENT

**1. The "2001 agreement" is ambiguous and genuine issues of material fact are in dispute.**

Ambiguity in language of a contract is found if the contract language is susceptible of more than one meaning. *Truck Ins. Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 418 A.2d 1187 (1980) and *Pacific Indemnity Co. v. Interstate Fire and Casualty*, 302 Md. 383, 389, 488 A.2d 486 (1985). The ambiguity in the so-called "2001 agreement" document – Ex. B, the letter from Lesniak dated March 19, 2001 – begins in the very first paragraph:

> Gunther:
>
> Per our discussion I have outlined my outstanding compensation from years 1999-2000 and have identified the means by which this compensation should be reimbursed. Also included is my agreement for 2001. Please review these documents and authorize at the bottom of page 2.

On a careful reading, the paragraph indicates two distinct parts to the document – an "outline of outstanding compensation" *and* "my agreement for 2001." To re-emphasize the impression given in the first sentence, Mr. Lesniak's uses the word "also" in the second sentence. Then, Lesniak's letter asks for a review of "these documents" – note the plural – in the third sentence. Moreover, on the second page, the agreement portion seems to be separated quite distinctly from the rest of the document with a centered, underlined, and italicized heading "2001 Agreement." Gunther Than, the signatory for defendant View Systems, claims that the signature applies only to the second part. Than at 44-45. However, in this lawsuit, plaintiff Lesniak quite

adamantly[2] claims that the single signature on the second page applies to the entire document. Plaintiff's Motion at 5-6.

Where the language of a contract is ambiguous, a court can consider extrinsic factors in ascertaining what the parties intended. *Insel v. Solomon*, 63 Md.App. 384, 492 A.2d 963 (1985), *L&H Enterprises, Inc. v. Allied Building Products, Inc.*, 88 Md.App. 642, 596 A.2d 672 (1990). Meaning can be derived from intent and purpose of the parties at the time the contract is made. *Anne Arundel County v. Crofton Corporation*, 286 Md.666, 673, 410 A.2d 228, 232 (1980). The intent and purpose of the parties are questions of fact. *Id*. Facts to consider would include the circumstances and conditions affecting the parties at the time, and their subsequent conduct and construction of the contract. *Id*. Where evidence is conflicting, or if the contract admits of more than one reasonable inference, the existence and terms of a contract are fact questions. See *Mehul's Inv. Corp. v. ABC Advisors*, 130 F.Supp.2d 700, 707 (D. Md. 2001), *Auslander v. Helfand*, 988 F.Supp. 576, 581 (D. Md. 1977) and *Eisenberg v. Air Conditioning, Inc.*, 225 Md. 324, 170 A.2d 743 (1961). See also *Masano v. Albritton,* 245 Md. 423, 226 A.2d 299 (1967), and *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 155 A.2d 484 (1959).

In his deposition testimony, Mr. Than explains that he believed he was signing the only the agreement portion of the March 19 letter, on the bottom of the second page.

> Q: Let me show you what has been marked as Exhibit 6, sir, because I think that is what you are referring to. Is this what you were referring to?
> A: Well, this agreement relates to part of it. This stuff is Bruce's listings of what he feels are bonuses and et cetera. He

---

[2] Plaintiff calls the View Systems interpretation "a brazen assertion", "ridiculous", and "nonsensical." Plaintiff's motion at 5-6.

4

> was always talking about bonuses. My response to Bruce is, Bruce, we have not even met any minimum sales, much less bonus, so –
> Q: Now, sir, I am just going to describe this for the record, --
> A: This is a document that I signed. This is whatever Bruce added to the top of that when he sent it to me.
> Q: Mr. Than, I am just going to describe this. You don't have to respond. What Mr. Than has just done is folded page two of Exhibit 6 in half, just above the heading "2001 Agreement," and when he says "this agreement", he's been pointing to the bottom half of the second page; is that correct Mr. Than?
> A: Yes. I'm – in March I agreed to –
> (Than at 44-45.)

The ambiguity is amplified when reviewing email exchanged prior to the execution of the document. Ex. D.[3] In an email dated March 1, 2001, Lesniak attaches his understanding of the agreement going forward, and his attachment makes no mention of other compensation. It is reasonably clear that it was this context in which Than was viewing the March letter.

With this strong evidence that Than's purpose and intent was to agree only to the second half of the document's second page, then to the extent Plaintiff suggests that the entire two-page document is the agreement, and to the extent Plaintiff suggests it was a comprehensive backward-and-forward looking settlement of all compensation, the suggestions place genuine issues of material facts squarely in dispute. For this reason alone, the summary judgment motion must be denied.

---

[3] The "Terry J. Harris" heading on the email is an unfortunate artifact of the electronic document production performed from the attorney's computer. Other than the heading, the exhibit is an accurate reproduction of the original email message.

Finally, Plaintiff points to a statement at the end of Mr. Than's long deposition as somehow admitting to the precise amounts claimed in the Complaint. Plaintiff's Motion at 2-3 and 6. He does no such thing. The statement, "Payroll wise I signed some documents where I owe the guy some money and I owe him shares" admits only to signing a disputed document. It certainly says nothing as to any amount. Indeed, in context, the statement is not the admission Plaintiff suggests, but a rather statement contained in a much longer narrative that simply consists of a description of his signature on the documents in dispute. Than at 77.

**2. Material facts are in dispute as to the counterclaim for Lesniak's breach under the 1999 Agreement.**

The so-called 1999 agreement, Ex. A, purports to govern the rights and responsibilities of the parties. But significant uncertainty remains, particularly relating to the responsibilities and performance of Mr. Lesniak under the agreement, namely to provide "Sales, Marketing, Management Consulting and Business Development Services". Ex. A at ¶ 1. In addition, the preamble to the agreement states, "Lesniak has a background in marketing, business development and management for security and surveillance products and is willing to provide services to View based on this background." Defendant View Systems filed a counterclaim in this case, based on Lesniak's failure to perform under the agreement, and in misrepresenting his background and abilities. Defendant's Answer and Counterclaim at ¶ 22-25.

Whether there has been substantial performance under a contract is a jury question. *Klingensmith, Inc. v. Snell Landscape Contactor, Inc.*, 265 Md. 654, 291 A.2d 56 (1972), *Schackow v. Medical-Legal Consulting Service, Inc.*, 46 Md.App. 179, 187 (1980). To be sure,

there is rather sharp dispute over whether Lesniak performed substantially. Than's deposition testimony is full of examples of his doubt: "Mr. Lesniak owed the company a huge – a huge amount of efforts, which we have never received" Than at 55-56; "Mr. Lesniak is representing us and a potential client refuses to do business with any product of a company he represents," Than at 30; "throughout 2000 there were ongoing discussions with Bruce Lesniak. We wanted some projections, budgets, indications of the results of his efforts, support needed of what was ongoing," Than at 39; "we were incurring debt which was increasing and increasing and increasing and Bruce was promising more sales and more revenue and it didn't occur," Than at 53; "the sales never came," Than at 65. At a minimum, this constitutes substantial evidence of the insubstantial performance by Mr. Lesniak and his firm.

Notwithstanding the sharp dispute over the nature and quality of Lesniak's failure to perform under the agreement, in a contract of this sort, calling simply for "Sales, Marketing, Management Consulting and Business Development Services", where it is largely left to one party's discretion how to perform under the contract, that party is obligated to perform in good faith. *Jay Dee Shoes v. Ostroff*, 191 Md. 87, 59 A.2d 738 (1948).

But good faith is also in sharp dispute. Than testified that "[Lesniak] told me he worked for us exclusive, nobody else. It was not true. He would go to shows and charge us for the shows and he would be peddling other companies' products." Than at 56. The deposition continues:

> Q: But your statement to me a minute ago was that Mr. Lesniak told you that he was going to work exclusively for View Systems?
> A: Correct.
> Q: You found –
> A: And 2000. And he said, all he's working – all he's working for is View Systems in 2000 and in 2001 for that matter.
> (Than at 59.)

7

Although Plaintiff currently claims that exclusivity was never required by the original, 1999 consulting agreement, the failure of exclusivity is certainly probative of Lesniak's good faith in his performance. Again, determination of substantial performance is a jury question. See *Klingensmith*. So too is a determination of whether the contractor, Lesniak, put in a reasonable effort. See *Trimed v. Sherwood Medical Co.*, 772 F.Supp. 879 (D. Md. 1991), aff'd 977 F.2d 885. See also *Informed Physician Services, Inc. v. Blue Cross and Blue Shield of Maryland*, 350 Md. 308, 711 A.2d 1330 (1998), reconsideration denied. Facts relating to the reasonableness of Lesniak's performance are therefore material and create issues genuinely in dispute.

It should be noted that as of the filing of this response, plaintiff has yet to produce a number of documents requested by defendant View Systems in discovery, and a motion to compel is outstanding. View Systems believes the documents requested would shed additional light on this particular issue of good faith and reasonableness of performance. View Systems also has a motion pending to depose Mr. Lesniak for the same purposes. Pursuant to Rule 56(f) and with the attached supporting affidavit of undersigned counsel for View Systems, the court should refuse the application for judgment until such time as the discovery can be had.

### 3. Plaintiff miscalculates claimed damages relating to stock.

Plaintiff claims that it is due the "highest intermediate price of the stock between the date of the contract (March 19, 2001) and the date when it became clear that View breached its agreement to issue the stock some time at the beginning of 2002." However, this is plainly not according to the law in Maryland. The measure of recovery, if any, would be the "actual value at

the time specified for its issuance." *Challenge Clothes Corporation v. Polski,* 181 Md. 590, 595, 31 A.2d 309, 311 (1943).

  Under the "2001 Agreement," View Systems was to issue "10,000 shares of stock per month issued at the master agreement price of .01 cents per share issued quarterly." Assuming that Lesniak was actually entitled to this compensation, the calculation of his damages is fairly straightforward -- 30,000 shares would be issued on April 1, 2001 (stock price $0.48 on 4/2/01), 30,000 shares on July 1 (stock price $0.43 on 7/2/01) and a pro-rated amount of stock for the period ending August 14, 2001 on October 1 (stock price $0.49).

  More to the point, however, the language of the 2001 agreement undercuts Plaintiff's argument that the agreement "did not specify a date certain for issuance of the stock." Plaintiff's Motion at 5. Even if "quarterly" is an uncertain term, it makes little sense to extend that manufactured uncertainty for many months, merely for the convenience of Plaintiff's tortured argument, namely that it is allowed a "highest intermediate price between the date of the contract (March 19, 2001) and the date when it became clear that View had breached its agreement to issue the stock some time at the beginning of 2002," Plaintiff's motion at 5 and again at 7. Why make such an argument? Only because View Systems stock traded very briefly at a higher stock price in mid-October of 2001. Besides, and whether it constituted a breach or not, it should have been clear to Plaintiff in August of 2001 that any further payments by View Systems were to be made on a commission basis only. Ex. E.

**4. There is a genuine issue of material fact relating to Plaintiff's claimed damages.**

Plaintiff makes a very simplified and unsupported claim that it is owed 396,500 shares of stock and $160,013.19 in cash. But the claim fails to account for a number of cash payments and issuances of stock by Defendant View Systems to Plaintiff Lesniak. Notwithstanding the disputes relating to the agreement(s), View Systems has paid $ 132,000 in cash to Lesniak and has issued 360,000 shares of stock. Exhibit F. These totals include $15,000 and 120,000 shares to repay a loan made by Lesniak to View Systems. Plaintiff's claim for damages fails to account for these payments.

Moreover, View Systems effectively terminated the disputed contractual arrangement in August of 2001. Because of financial difficulties caused largely by Lesniak's failures of performance, the View Systems Board of Directors acted to place all sales personnel on a commission-only basis. The action was communicated in a letter to Lesniak dated August 14, 2001. Ex. E.

Plaintiff's complaint states $160,013.19 and 396,500 shares as damages "as of August 26, 2002," Complaint at ¶ 11. However, Plaintiff's answers to interrogatories state: "None of the amounts claimed in the Complaint relate to work performed after August 12, 2001." Answer to Interrogatory No. 9. Exhibit G. Even if one assumes Lesniak was due $93,155 in cash and 400,000 shares in March based on the March 19, 2001 letter, Complaint at ¶ 9, is it impossible to figure out how that the cash owing ballooned to $160,013.19 while the shares owing shrunk to 396,500 by August as demanded by the complaint and the motion for summary judgment. In sum, it is completely unclear therefore what damages are actually being asserted and how those damages are calculated. And for this reason, the motion for summary judgment must fail.

It also should be noted that as of the filing of this response, plaintiff has yet to produce a number of documents requested by defendant View Systems in discovery, and a motion to compel is outstanding. View Systems believes the documents requested would shed additional light on this particular issue of damages. View Systems also has a motion pending to depose Mr. Lesniak. Pursuant to Rule 56(f) and with the attached supporting affidavit of undersigned counsel for View Systems, the court should refuse the application for judgment until such time as the discovery can be had.

**5. There is a genuine issue of material fact relating to Defendant View Systems' damages under the counterclaim.**

View System's counterclaim is based on Lesniak's failure to deliver what was expected of him. The counterclaim requests damages in the amount of payments made to Lesniak on the contract as well as lost profits, particularly with respect to sales of View Systems products to ADT, as repeatedly promised by Lesniak. The undisputed payments made to Lesniak total $132,000 in cash and some 360,000 shares of View Systems stock. Of that amount, $15,000 and 120,000 shares was payment-in-full for a loan made by Lesniak. Exhibit F. At a minimum, contract damages to View Systems, with complete certainty, is therefore $117,000 and 240,000 shares.

As the preamble to the "1999 agreement" indicates, "Lesniak has a background in marketing, business development and management for security and surveillance products and is willing to provide services to View based on this background." This background, as presented to View Systems at the time, involved Lesniak's relationship and prior employment at ADT, a

11

major security systems corporation, and a huge potential market for View Systems equipment. Than makes if quite clear in his deposition:

> Q: Okay. Mr. Lesniak represented himself as having a relationship with ADT that would allow him to deliver them as a customer?
> A: Not only that, that was a direct promise. He told me he was a vice president of ADT and that Mike Snyder, the president of ADT, would take his calls any time and he would take me there and that they would buy our product.
> Q: And that's –
> A: I paid this man for the direct purpose of doing those things.
> Q: And that's why you hired Mr. Lesniak's firm?
> A: Because he represented himself as taking our product to the majors; ADT being one of them.
> (Than at 30-31.)

To avoid the issue, Plaintiff now claims that any such relevant information is barred by the integration clause in the 1999 agreement. Yet such information is admissible to help identify, explain or define the subject matter of the contract or to explain ambiguous language. Meanings of words and phrases can be found outside the instrument. *Winand v. Case*, 154 F.Supp. 529 (D. Md. 1957), *Allen v. Steinberg*, 244 Md. 119, 223 A.2d 240 (1966). In this case, the testimony is highly probative of "Sales, Marketing, Management Consulting and Business Development Services" supposed to be provided by Lesniak under the 1999 agreement. Indeed, the failure to perform these services constitute the core of View Systems' counterclaim for breach of the contract.

The parol evidence rule, as invoked here by plaintiff to bar this information pertinent to the 1999 agreement, will not apply to subsequent agreements. *Walde v. Capital Mortg. Investments*, 288 Md. 343, 407 A.2d 1143 (1979). Plaintiff acknowledges that "The parties had a series of contracts. Each contract was a stand-alone agreement between the parties and

12

superseded the prior contract." Ex. G, Plaintiff's Answer to Interrogatory No. 5.  The disputed "2001 agreement" has no integration clause that would otherwise bar this information.

In any event, Lesniak made many representations regarding large potential sales that never came through.  Bruce Lesniak told Than on several occasions that he could sell several thousand units of View Systems security products to ADT, or to other major security companies, within a short period of time.  Lesniak wet so far as to suggest that View Systems would need to supply approximately 100 units per month to start, rising to several hundred units per month. Exhibit H - Than affidavit at ¶ 4.  Lesniak even suggested pricing for the units. Exhibit I.

Plaintiff cites *Impala Platinum Limited v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 389 A.2d 887 (1978), for the notion that lost profit damages cannot be recovered unless they can be proved with "reasonable certainty."  As the case points out, however, that "recovery may often be based on opinion evidence, in the legal sense of that term, from which liberal inferences may be drawn.  Generally, proof of actual or even estimated costs is all that is required with certainty." *Impala Platinum*, 283 Md. at 331, quoting *M&R Builders v. Michael*, 215 Md. 340, 348-349, 138 A.2d 350 (1958).  The quote continues:

> "Some of the modifications which have been aimed at avoiding the harsh requirements of the 'certainty' rule include: (a) if the fact of the damage is proven with certainty, the extent or amount thereof may be left to reasonable inference; (b) where a defendant's wrong has caused the difficulty of proving damage, he cannot complain of the resulting uncertainty; (c) mere difficulty in ascertaining the amount of damage is not fatal; (d) mathematical precision in fixing the exact amount is not required; (e) it is sufficient if the best evidence of the damage available is produced; (f) the plaintiff is entitled to recover the value of his contract as measured by the value of his lost profits." *Id.*

Opinion evidence, the case notes, is that which is given by a person of ordinary capacity who has by opportunity acquired a particular knowledge outside the limits of common observation. *Id*.

Than, CEO of View Systems, estimates that with a potential profit of $1000 - $1500 on each of the "several thousand" units Lesniak was promising he could sell, the lost profits to View Systems easily approaches $3 million. Than Affidavit at ¶ 5. (As to Than's supposed admission in deposition "that View has no evidence from which View could prove damages with any degree of certainty," Plaintiff's motion at 10, it is not entirely clear from the context of Than's statement what he was referring to when he says "I don't know how much damage there really is done." Than at 76. He was answering a question about Lesniak's representations regarding [S]ensormatic.)

In any event, the evidence to support the counterclaim is admissible, it is substantial, it creates a genuine issue of material fact, and summary judgment cannot be granted.

**Wherefore**, Defendant/Counter-Plaintiff View Systems, Inc., respectfully requests that Plainiff/Counter-Defendant's Motion be denied.

**Wherefore,** Pursuant to Rule 56(f), the court should refuse the application for judgment until such time as pending requests for discovery can be had.

                                                  /s/
                                         Terry J. Harris
                                         Law Offices of Terry J. Harris
                                         301 N. Charles Street, Suite 902
                                         Baltimore, MD 21201
                                         410-576-0800
                                         410-547-6655 – fax
                                         Federal Bar No.: 26767
                                         Attorney for Defendant View Systems, Inc.

**Certificate of Service**

I hereby certify that on Monday, April 21, 2003, a copy of this memorandum with the accompanying exhibits was hand-delivered to Jonathan Ruckdeschel, Parker, Dumler & Kiely, LLP, 36 S. Charles St., Suite 2200, Baltimore, MD 21201.

\_\_\_/s/_____
Terry J. Harris