IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LESNIAK & ASSOCIATES, INC.          *

    Plaintiff                                      *

v.                                                  *       Case No: JFM 02 CV3305

VIEW SYSTEMS, INC.                       *

    Defendant                                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The Plaintiff/Counter-Defendant, Lesniak & Associates, Inc. ("Lesniak"), by its undersigned attorneys, files the following Reply to the Opposition to Lesniak's Motion For Summary Judgment filed by View Systems, Inc. ("View") and states as follows:

**BACKGROUND**

This matter arises from the admitted breach by View of an unambiguous two-page contract. The contract, which was signed by View's president, Gunther Than, specifically acknowledged that View had failed to pay Lesniak over $93,000.00 and failed to issue Lesniak hundreds of thousands of shares of stock in 1999 and 2000. The agreement then set forth the parties' agreement for Lesniak's compensation during 2001. Not only is the plain language of the 2001 Agreement entirely unambiguous, View also does not contest Lesniak's testimony that:

> During [2001 and into 2002] Gunther Than consistently and repeatedly assured me that View Systems owed the money and stock to Lesniak & Associates and would pay Lesniak & Associates the amounts owed.

Lesniak Affidavit ¶ 9. Now, faced with crushing evidence and testimony, not only of Lesniak, but also of Than himself, View has desperately pieced together a mélange of arguments in a last-

gasp attempt to avoid summary judgment. View's arguments are without support and the motion for summary judgment must be granted.

## View's Opposition To The Motion For Summary Judgment

In response to Lesniak's Motion, View sets forth a number of alleged disputes regarding the facts that View asserts prevent summary judgment. Each of View's assertions is without factual or legal support.[1]

### A. The 2001 Agreement Is Not Ambiguous.

View's first attempt to avoid summary judgment is to argue that the terms of the 2001 Agreement are ambiguous. View's argument is based on (a) an entirely unreasonable interpretation of the plain language of the language of the 2001 Agreement under which View asserts that Than's signature only relates to the portion of the agreement discussion compensation going forward; and (b) inadmissible evidence regarding the parties' ongoing discussion regarding unpaid compensation prior to the execution of the 2001 Agreement. Both of View's arguments are unconvincing.

First, View attempts to support its claim that the 2001 Agreement is ambiguous by examining the language of the first paragraph of the 2001 Agreement, which states in full:

> Per our discussion I have outlined my outstanding compensation
> from years 1999-2000 and have identified the means by which this
> compensation should be paid. Also included is my agreement for
> 2001. Please review these documents and authorize at the bottom
> of page 2.

View now asserts that the signature at the bottom of page 2 only relates to the "agreement for 2001" and does not relate to the outstanding compensation despite the explicit language of the

---

[1] In the interests of simplicity, Lesniak has reordered the arguments raised by View to first address the arguments regarding Lesniak's claims and then address View's arguments regarding the Counterclaim. Similarly, while Lesniak responds to each of View's arguments, it is important to note that many of Views arguments are dependent upon the court finding that the 2001 Agreement is ambiguous.

2

final sentence that the signature relates to both sections of the agreement. Indeed, View bizarrely argues that the clear reference to both clauses in the final sentence is somehow evidence that the signature does **not** relate to both clauses.

Simply put, View's interpretation of the contract is manifestly unreasonable. No reasonable person can look at the plain language of the 2001 Agreement and believe that the signature does not relate to the entire document. The fact that Lesniak broke out past and prospective compensation into separate sections in no way furthers View's argument. To the contrary, the final sentence of the first paragraph explicitly refers to both sections of the document when instructing Than to sign and authorize the contract. View's "interpretation" is simply unreasonable.

Nor does View's inadmissible claim that the parties were in discussions regarding the amount of cash and stock owed to Lesniak prior to execution of the 2001 Agreement further View's contention. Mr. Lesniak has testified in his affidavit that Lesniak refused to continue to work for View unless the parties entered into an agreement regarding past compensation. Lesniak ¶ 7. <u>This testimony is not controverted by View.</u> The fact that the parties were in active discussions about the amount of compensation owed to Lesniak prior to the execution of the 2001 Agreement leads naturally to the conclusion that the 2001 Agreement was a universal agreement between the parties regarding past and future compensation – just as is reflected by the plain language of the contract.

View's attempt to rely on a pre-agreement e-mail that addressed compensation going forward is both inadmissible and unconvincing. View's assertion that the court can rely upon extrinsic evidence in interpreting a contract is true if the contract is ambiguous. The 2001 Agreement is not ambiguous. Moreover, the argument does not support View's claim. View

argues that the fact that, prior to the execution of the 2001 Agreement Lesniak sent an e-mail to Than that only addressed the issue of compensation going forward supports Than's interpretation. It does not. There is nothing unusual about parties discussing piecemeal issues that are then included in a single contract. The language of the 2001 Agreement cannot be clearer. The agreement contains two sections. The Agreement instructs Than to review both sections and to sign the agreement to authorize the contract.

View's argument that the 2001 Agreement is ambiguous is nothing more than a desperate attempt by View to again avoid payment of money it has repeatedly admitted it owes.

### B. View Fails To Raise Any Dispute Of Material Fact Regarding The Amount Of Cash Owed To Lesniak.

Lesniak has properly submitted testimony that he is owed $160,593.24 in cash compensation. The basis for this amount is contained in the 2001 Agreement, which specifically acknowledges that View owed Lesniak $93,155.00 and which provided that Lesniak would be paid $7,000.00 per month going forward for "promoting View Systems into the security market and directing View Systems Corporate Development efforts." [2]

It is not disputed that Lesniak continued to work for View Systems through June 2002. At a rate of $7,000 per month, Lesniak was entitled to 18 months compensation totaling $126,000.00. Adding this to the $93,155.00 acknowledged by View in the 2001 Agreement, Lesniak was owed a total of $219,155.00. Lesniak acknowledges that View made some

---

2 In this regard, View cited Lesniak's Answer to Interrogatory No. 9 as creating a dispute regarding the amount of compensation owed. Opposition p. 10. Review of Lesniak's answer revealed that it contained a typographical error that led to View's confusion. Attached as Plaintiff's Exhibit F is an Amended Answer to Interrogatory No. 9 that corrects the error so that the Answer states that *much* of the amounts claimed relate to work performed prior to August 12, 2001 and that *all* of the amounts claimed relate to work performed prior to June 2002. Lesniak apologizes for any confusion caused by this typographical error and sets forth below a more detailed accounting of the makeup of the amounts claimed.

payments to him subsequent to the 2001 Agreement and that the total outstanding compensation due to him is $160,593.24.

View has not provided any evidence that Lesniak's claims are not true. While Than asserts that there is a dispute regarding the amount owed, Than's affidavit is silent regarding what amount of funds View contends are owed to Lesniak. Similarly, while View submits Defendant's Exhibit F as "evidence" of various payments to Lesniak, Than's affidavit does not authenticate or explain the relevance of Exhibit F in any way. Equally important, assuming that Exhibit F was properly before the court, Exhibit F shows that View owes Lesniak **more** cash than Lesniak is claiming.

All but two of the payments shown in Exhibit F are either before the 2001 Agreement or reflect reimbursement of expenses, or both. Were the court to consider Exhibit F, it shows that View paid Lesniak $55,000.00 between March 19, 2001 and July 2002.[3] As such, Exhibit F shows that View is entitled to a credit of $55,000.00 against the total compensation owed to Lesniak of $219,155.00 leaving a balance due to Lesniak of $164,155.00. This, of course, is more than Lesniak asserts is owed to him and does not create a dispute of fact that precludes summary judgment.

    C.    **Lesniak Has Articulated The Proper Valuation For View's Failure To Issue Stock.**

View's claim that Lesniak has not articulated the correct theory for valuation of the unissued stock is similarly unconvincing. First, View's attempt to rely upon the precise holding from Challenge Clothes v. Polski, 181 Md. 590 (1943), (a case cited by Lesniak in its Motion) ignores the fact that the contract does not contain a time certain for issuance of the overdue

---

3 The fifth page and eighth pages of Exhibit F show a payment of $30,000 on May 2, 2001. The only other payment for professional fees after March 19, 2001 reflected in Exhibit F is a February 12, 2002 payment of $25,000 on page 12 of Exhibit F.

5

stock. Motion Exhibit A. While <u>Challenge Clothes</u> certainly holds that damages are measured at the time for issuance of the stock, there is no specific time in the contract for issuance of the overdue shares. As such, and as argued by Lesniak in its Motion, <u>Challenge Clothes</u> is only applicable in conjunction with the implication of a "reasonable" time term into the contract. See e.g., <u>Anne Arundel Co. v. Crofton Corp</u>, 286 Md. 666, 673, 410 A.2d 228 (1980) ("In the absence of an express time for performance, a reasonable time will be implied.").

      D.    **Lesniak Agrees That Different Valuation Dates Are Required For Shares Due After October 9, 2001 And Revises Motion To Include Detailed Breakdown Of Unissued Shares And Valuation Of Same.**

Lesniak agrees that to the extent that any of the stock relates to payments that came due after the October 9, 2001, a different valuation is required and revises the Motion for Summary Judgment as set forth below. Because View continued to assure Lesniak that it was going to issue the shares, these payments should be valued at the highest intermediate value for the stock between the date for issuance and a reasonable time after July 8, 2002, when View instructed Lesniak to cease work. Similarly, 120,000 shares due under the 2001 Agreement were unissued options with a purchase price of $0.50/share. As such, Lesniak has reduced the damage claim regarding those shares to reflect the net loss to him accounting for the option price. The revised value of the stock claimed is, as follows:

| Number Of Shares | Source | Share Value[4] | Damages |
|---|---|---|---|
| 150,000 | 60,000 for 2000 bonus reflected in 2001 Agreement<br><br>90,000 for January to September 2001 | $1.21/share<br>October 9, 2001 | $181,500.00 |

---

[4] The daily stock prices for 2002 are attached hereto as Plaintiffs Exhibit E.

|         |                                                                                                                   |                                                                                                               |              |
|---------|-------------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------------------------|--------------|
|         | compensation reflected in 2001 Agreement                                                                          |                                                                                                               |              |
| 120,000 | Unissued options with exercise price of $0.50/share reflected in 2001 Agreement                                   | $0.71/share calculated using $1.21/share price of October 9, 2001 minus $0.50/share option price.             | $102,240.00  |
| 36,500  | 30,000 compensation for fourth quarter 2001 reflected in 2001 Agreement<br><br>6,500 unit bonus for sales in 2001 | $0.85/share calculated as of Jan. 2, 2002                                                                     | $31,025.00   |
| 30,000  | 30,000 compensation for first quarter 2002 reflected in 2001 Agreement                                            | $0.49/share calculated as of July 10, 2002                                                                    | $14,700.00   |
| 60,000  | 30,000 compensation for second quarter 2002 reflected in 2001 Agreement<br><br>30,000 for reimbursement of stock sold due to nonpayment of cash compensation | $0.49/share calculated as of July 10, 2002                                                 | $29,400.00   |

**TOTAL DUE FOR STOCK    $358,865.00**

Using these revised figures, Lesniak's revised claim for damages in this Motion is hereby reduced from $593,784.19 to $518,878.19, representing the $160,013.19 unpaid cash compensation and $358,865.00 for value of the unpaid stock.

Should the court determine that there is a dispute of fact regarding the valuation of the unissued stock, such a dispute does not preclude summary judgment regarding the issue of liability. View's attempt to recast Than's testimony in deposition where he repeatedly admitted

7

owing Lesniak the stock ignores Lesniak's citation to pages 54 - 55 of Than's testimony in which Than confirmed that the stock was owed to Lesniak. Than p. 54-5. Than's later testimony confirmed this admission yet again. Than p. 77.

> E.  **View's Argument Regarding The Counterclaim Is Unsupported By The Pleadings And Evidence.**
>
>> 1.  **The Counterclaim Does Not Assert Any Claim For Fraud Or Any Breach Other Than Failure To Achieve Sales With ADT.**

Rather than responding to the substance of Lesniak's arguments regarding the View's Counterclaim, View embarks on an attempt to salvage its deficient and unsupported claim by rewriting the allegations of the Counterclaim. Specifically, View asserts that it

> filed a counterclaim in this case, based upon Lesniak's failure to perform under the agreement, and in misrepresenting his background and abilities. Defendant's Answer and Counterclaim at ¶ 22-25.

Opposition p. 6. This assertion has no connection to the language of Paragraphs 22-24 of the Counterclaim which allege one very specific breach by Lesniak.[5]

> 22.  Defendant View Systems, Inc. and Plaintiff Lesniak and Associates, Inc. entered a consulting agreement in which Plaintiff was to supply consulting services in sales, marketing, business development, and management consulting. Exhibit A.
>
> 23.  Plaintiff failed to perform its responsibilities under the consulting agreement.
>
> 24.  In particular, Plaintiff promised but failed to develop business opportunities with ADT, a major market for security systems. The lost business opportunity caused damages to Defendant estimated at $3 million.

---

5 As set forth in the Motion for Summary Judgment, the obvious problem with the Counterclaim is that neither contract contains any duty upon which View could support its' claim.

8

Counterclaim ¶¶ 22-24. Nowhere does View allege any breach by Lesniak other than the failure to develop the ADT business opportunity.

While View now contends that the parties could have had a subsequent verbal agreement that formed the basis of such a contractual duty <u>the counterclaim does not allege any such agreement, nor did Than assert any such agreement in deposition.</u> In this regard, it is important to remember that Than testified that the promises that formed the basis of the counterclaim were made <u>before</u> entry into the 1999 Agreement, which contains an integration clause. Than p. 23-4. Similarly, while View now asserts that Lesniak fraudulently induced View into the contract, <u>the Counterclaim does not allege fraud</u>, (which must be pled with particularity under Fed. R. 9(b)). Nor does View submit any evidence upon which a finding of fraud could be based.

Obviously, had the counterclaim asserted such claims, Lesniak would have conducted extensive discovery into the allegations and would have addressed those claims fully in its motion. View cannot cure the gross deficiencies of its Counterclaim by cavalierly rewriting the Counterclaim in its Opposition. The deadline for amendment of the pleadings in this matter expired on January 10, 2003.

View's allegations regarding Lesniak's performance are similarly baseless. First, View continues to rely upon Than's theory that Lesniak's employment by View was exclusive despite the lack of any support for such claim in the contracts. Second, no such duty or breach is alleged in the Counterclaim. While View asserts that the terms of the written contracts could have been altered or supplemented by a subsequent verbal agreement, View never alleged any such agreement in the Counterclaim. Third, View's "good faith" argument is also without support. There is no allegation in the Counterclaim that Lesniak breached any duty of "good faith".

9

Moreover, Than testified that Lesniak worked hard for View and that the only basis for the Counterclaim was that the sales did not materialize. Than p. 64-5.

### 2. Assuming There Was A Duty To Specifically Develop Business Opportunities With ADT, There Is No Evidence Of Breach.

Assuming that there was a specific contractual duty for Lesniak to develop business opportunities with ADT, View has not produced any evidence of a breach by Lesniak. Than admitted at deposition that the only basis for this claim was that the sales never were consummated. Than p. 64-5. The fact that sales are not consummated is not evidence of failure to develop a business opportunity. Than admitted that Lesniak worked hard, that View's financial problems hampered sales efforts. Than p. 64-5, 68-70. Far from having produced any evidence that Lesniak failed to develop the ADT opportunity, Than's testimony supports Lesniak's efforts to promote View. Than p. 28. That those efforts ultimately did not result in sales is not evidence of breach of a duty to attempt to develop business opportunities with ADT.

### 3. View Has No Authority For Its Claim That It Is Entitled To Reimbursement Of Lesniak's Salary Based Upon Insufficient Performance.

View asserts that it is entitled to reimbursement of all monies and stock paid to Lesniak as a result of Lesniak's alleged insufficient performance. View provides no legal authority for the proposition that an employer is entitled to reimbursement of a salaried employee's pay based upon a failure to consummate sales. Indeed, View's belated attempts to claim fraudulent inducement are an implicit recognition by View that, absent fraud or a deliberate and willful breach (which are not alleged) there is no authority that an employer may sue the employee for recovery of past salary payments. C.f., Chai Management v. Leibowitz, 50 Md. App. 504, 514, 439 A.2d 34, 40 (1982)(agent guilty of fraud on his principal may be denied compensation).

The agreements between the parties further this conclusion. The 1999 Agreement contained separate provisions regarding salary for business development activities and commission for sales. Exhibit A, Sections 3 & 4. View could obviously terminate Lesniak if it believed his business development activities were not successful (provided it did so in compliance with the termination provisions contained in Section 7 of the agreement), but there is no support for View's claim that it would be entitled to return of Lesniak's salary if it was dissatisfied with Lesniak's performance. Similarly, nowhere does the 2001 Agreement state that Lesniak's compensation was related to or contingent upon successful sales.

> F.  **There Is No Admissible Evidence Regarding View's Claimed Damages.**
>
>    1. **View Has Submitted A Sham Affidavit Of Than In An Attempt To Avoid The Consequences Of Than's Admissions At Deposition.**

View attempts to avoid Than's testimony that he had no evidence regarding the amount of damages by submitting a sham affidavit of Than that directly contradicts his deposition testimony. In so doing, View disregards the relevant portion of Than's testimony in favor of a selective quotation. View desperately claims that Than's testimony did not relate to the counterclaim but instead concerned a company called Sensormatic.[6] Opposition p. 14. This claim ignores reality. The line of questioning cited by Lesniak and referred to in the Motion for Summary Judgment began on Page 72 of Than's deposition with the question:

> Q:   What is the basis, sir, for the statement in paragraph 24 of the Counterclaim that "The lost business opportunity with ADT 'caused damages to the Defendant estimated at $3 million."

Than p. 72. Than responded by attempting to broaden the allegation of the counterclaim to include other companies, including Sensormatic.

---

6 All references use View's spelling of Sensormatic rather than the deposition transcript spelling Censormatic.

11

> A:    Well, not specifically just ADT. For instance, Sensormatic, I took several trips to San Diego on a one-day's notice because they were ordering thousands of units and his buddy, the president of Sensormatic was, you know, ready to sign the deal and it ends up his buddy was out of Sensormatic two weeks later and I begin to think wow, this is almost like a setup.

Id. (emphasis added). Than continued to provide rambling answers to counsel's questions regarding the basis for his statements until Than stated, clearly and unequivocally:

> A:    Now I don't know how much damage there really is done. Probably we should have gotten a different entity to direct our sales efforts. I don't know that. I strongly suspect that. **This is a gray area. Payroll-wise I signed some documents where I owe the guy some money and I owe him shares. I have been trying to give him the shares for a year.** But he never wants to accept the shares. It's always a package deal. . . .

Than p. 76-7 (emphasis added). Than's testimony is clear. Lesniak asked Than the basis for the $3 Million Dollar claim in Paragraph 24 of the Counterclaim. Than embarked on a series of rambling diatribes about Lesniak at the conclusion of which he stated, without condition: "Now I don't know how much damage there really is done." Id. These statements are precisely what Lesniak portrayed them to be in the Motion for Summary Judgment.

Now, View has changed its story and submitted an affidavit that attempts to change Than's testimony. At deposition, Than attempted to expand the scope of the counterclaim by asserting that the $3 million dollar figure included companies such as Sensormatic and admitted "I don't know how much damage there really is done." Than p. 76. Now, Than attempts to retract his claims and to assert that (1) the damages all relate to ADT; and (2) that he has a formula that provides the basis for the claim. Than had a full opportunity at deposition to provide the basis for the claim and admitted he had none. Now Than has changed his story and articulates not only a "basis" for the claim, but also a "basis" that fundamentally conflicts with his deposition testimony. The Fourth Circuit and this Court have repeatedly and forcefully rejected sham affidavits such as Than's as being insufficient to preclude summary judgment.

12

See e.g., Barwick v. Celotex, 736 F.2d 946 (4th Cir. 1984); Church v. Maryland, 180 F.Supp.2d 708 (D.Md. 2002).

  2. **View's Attempt To Assert That View Cancelled The 2001 Agreement Is Without Merit And Insufficient To Create A Dispute Of Material Fact That Precludes Summary Judgment.**

View's final attempt to create an issue of fact regarding the amount of compensation owed to Lesniak is based upon Defendant's Exhibit E, which is an unsigned letter to Than from Martin Maassen, Chairman of the Board, which purports to reflect a decision of the Board of Directors "to put all marketing and sales personnel on commission only, or draw against commissions, plus expenses." Exhibit E. View asserts that it informed Lesniak of this by letter and that "despite initial disagreement with the letter, Lesniak continued to work for View Systems well into 2002." Opposition p. 2.

View's contention that the decision of the board of directors to place salespersons on "commission only" cancelled the 2001 Agreement is simply not sufficient to create a dispute of fact in this matter. First, Lesniak was not hired as sales personnel. The 2001 Agreement hired Lesniak "for the purpose of promoting View Systems into the security market and directing View Systems Corporate Development efforts." As such, the Board of Directors action, if it occurred, facially did not relate to Lesniak.

View asserts that Lesniak disagreed with the decision but "continued to work for View Systems well into 2002". Apparently, View asks the Court to believe that, despite their long and troubled history regarding compensation, Lesniak agreed to cancel the 2001 agreement and to continue to work <u>without any agreement regarding compensation</u> for nearly a year. This contention is not worthy of belief, particularly given Than's uncontested acknowledgements to Lesniak over the course of 2001 and 2002 that View owed Lesniak the money and stock.

13

View's own Exhibits to its Answer and Counterclaim (attached as Plaintiff's Exhibit G), show that there was no such agreement to cancel the 2001 Agreement. Exhibit B to the Counterclaim is an unsigned letter dated August 20, 2001 from Than to Lesniak that states, in full, "I have been instructed to execute this per the Board of Directors." To what this refers is a mystery. Exhibit B also includes a copy of Maassen's unsigned August 14, 2001 memo to Than regarding compensation of salespersons. Neither of these documents supports View's contention that Lesniak agreed to cancel the 2001 Agreement and continue to work for free.

Similarly, Exhibit C to the Counterclaim is a letter dated July 8, 2002 which states "as previously stated in our letters dated April 24, 2002 and August 14, 2001 (letters attached), please cease all activities on behalf of View Systems, Inc. until we come to a final settlement and going forward agreement." Exhibit C also contains a letter dated April 24, 2002, but does not contain any letter dated August 14, 2001. (Copies of these letters are attached hereto as Exhibit G). At best, these letters show that, as of July 8, 2002, the parties had not yet replaced the 2001 Agreement with a new agreement.

In any event, View's argument in this regard at best creates a dispute of fact regarding only the amount of compensation due to Lesniak after August 20, 2001. At most, that amounts to 10 months (September 2001 – June 2002) and would place in dispute only $70,000 and 70,000 shares of stock. Summary judgment would be appropriate on all remaining amounts.

**WHEREFORE**, the Plaintiff/Counter-Defendant, Lesniak & Associates, Inc., requests that the court grant it summary judgment on the complaint in the total amount of $518,878.19, plus prejudgment interest and costs of this action.

/s/ Jonathan Ruckdeschel
Mark M. Dumler, Bar No.: 07893
Jonathan Ruckdeschel, Bar No.: 25015
Parker, Dumler & Kiely, LLP
36 South Charles Street, Suite 2200
Baltimore, Maryland 21201
(410) 625-9330

Counsel Lesniak & Associates, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 8, 2003, a copy of the foregoing Motion was served via e-filing on Terry J. Harris, Esquire, 301 N. Charles Street, Baltimore, Maryland 21201.

/s/ Jonathan Ruckdeschel
Mark M. Dumler
Jonathan Ruckdeschel