IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LESNIAK & ASSOCIATES, INC. | * |
| | * |
| v. | *  Civil No. JFM-02-3305 |
| | * |
| VIEW SYSTEMS, INC. | * |
| | * |

*****

MEMORANDUM

    Lesniak & Associates, Inc. ("Lesniak") has brought this action against View Systems, Inc. ("View") alleging breach of contract based on View's failure to make payments of cash and stock under a consulting agreement between the parties. View has counterclaimed alleging Lesniak breached the contract by substantially failing to perform. Lesniak has now moved for summary judgment on both the original claim and the counterclaim. For the reasons stated below, I will grant Lesniak's motion with respect to liability and deny its motion with respect to the amount of damages.

I.

    View manufactures and sells video surveillance equipment to the security services industry. In July 1999, View entered into a consulting agreement with Lesniak under which Lesniak was to provide "Sales, Marketing, Management Consulting and Business Development Services." (*See* Consulting Agreement, Def.'s Opp'n Ex. A, at 1.) In exchange, Lesniak was to receive a monthly fee of $4,000 in addition to stock, stock options, and an incentive bonus at the discretion of View's Board of Directors. The agreement also provided for commission payments on sales constituting "new business." (*See id.*)

    In August 2000, the parties redefined their relationship and set forth the terms in a new

agreement effective January 1, 2000. Under the new arrangement, Lesniak was to receive $7,000 and 10,000 shares of stock per month in addition to reimbursement for expenses, a possible year-end bonus, and commissions on "large sales." (*See* 2000 Agreement, Compl. Ex. A.) Under this new contract, View also agreed to pay Lesniak 100,000 shares of stock as Lesniak's year-end bonus for 1999. (*See id.*)

View had difficulty in making the required payments under this new agreement and was short of cash to meet other obligations as well. (*See* Than Dep., Pl.'s Mem. Ex. C, at 54-55.) During 2000, Lesniak twice loaned View sums of money, $15,000 and $30,000, to cover View's payroll. (*Id.* at 68-69.) The first loan was to be repaid in cash and the second loan was to be covered by a transfer of 120,000 shares of View stock. (*See* March 19, 2001 Letter Agreement, Pl.'s Mem. Ex. B.) Lesniak accepted View's assurances that the loans would be repaid and that the outstanding compensation was forthcoming.

Although View continued to fail in fulfilling its obligations through early 2001, Lesniak nonetheless entered into another agreement with View on March 19, 2001. (*See id.*) In this contract, View's outstanding obligations to Lesniak are clearly set forth, as are the terms of the relationship going forward into 2001. (*Id.*) The terms of the relationship for 2001 were not substantially altered from the terms of the 2000 agreement. Lesniak asserts that a material inducement to enter into the 2001 agreement was View's promise to pay the compensation owed for previous years as described in the agreement. (*See* Lesniak Aff. ¶ 7.)

Lesniak claims to have continued working under the 2001 agreement through June 2002. (*See* Compl. ¶ 10.) In August 2001, however, View's Board reviewed the "dismal results of second

quarter" and decided to "put all marketing and sales personnel on commission only plus expenses." (Letter from the Board to Than of 8/14/01, Def.'s Opp'n Ex. E.)  The letter instructing View's president, Gunther Than, to take this action was forwarded to Lesniak with a cover letter dated August 20, 2001.  (*See* Pl.'s Reply Ex. G.)  Lesniak, however, continued to render services under the apparent belief that Lesniak & Associates was not "sales personnel" and/or that Lesniak was also engaged in activities outside the scope of the directive (*i.e.* business development and management consulting).  (*See* Pl.'s Reply at 13.)  On April 24, 2002, a second letter was sent to Lesniak explaining that the August 14, 2001 directive from the Board was intended to apply to Lesniak and asking that Lesniak "cease all activities on behalf of View" until a new agreement could be reached.  (*See* Pl.'s Reply Ex. G.)  Lesniak did not stop working for View, however, until it received a July 8, 2002 letter again asking it to cease all activities on behalf of View until a final settlement and new agreement could be reached.  (*See id.*)

II.

A.

Resolution of this case turns upon the existence, scope, and interpretation of the 2001 agreement between the parties.[1]  "Maryland has long adhered to the objective interpretation of contracts."  *County Comm. of Charles County v. St. Charles Assoc. Ltd. P'ship*, 784 A.2d 545, 556 (Md. 2001) (citing Maryland cases).  "The clear and unambiguous language of an agreement will

---

[1] Because earlier outstanding obligations were incorporated as part of the consideration for the 2001 contract, Lesniak focuses on the breach of the final contract to simplify the assessment of resulting damages.

not give way to what a party thought the agreement meant or was intended to mean." *Id.* "If the intention [of the parties] is plainly manifest upon the face of the instrument there is no room for interpretation." *Id.* (quoting *Maryland Coal Co. v. Cumberland & Pennsylvania Railroad Co.*, 41 Md. 343 (1875).) A contract between the parties in this case exists and the language of that contract is unambiguous.

View's primary argument concerning the validity of the March 19, 2001 contract focuses upon the scope of that contract and whether the signature of View's representative, Gunther Than, was intended to apply to the whole document or merely the second half of the second page. The March 19 contract is set forth in a letter from Bruce Lesniak to Gunther Than. In that letter, Lesniak told Than that he had outlined the amounts Lesniak was owed (and the method of reimbursement) as well as the terms of the agreement for 2001. He then asked Than to "review these documents and authorize at the bottom of page 2." (*See* Pl.'s Mem. Ex. B.) The portion of the contract outlining View's outstanding obligations runs from the first page into the middle of the second page, and the terms that were to apply in 2001 are set forth on the second half of the second page. (*See id.*) The signature of Than appears at the bottom of page two in the space provided, right beside the signature of Bruce Lesniak. (*See id.*) View's contention that Than's signature somehow only applies to the terms of the agreement for 2001 is entirely unreasonable and unsubstantiated by the evidence.

View invites me to examine the extrinsic evidence in order to clarify the "ambiguity" View contends exists in the language of the letter agreement. There is no need to examine extrinsic evidence because the language of the agreement is clear – Than was asked to authorize both documents with a

single signature on the bottom of the second page, which he did.[2]  Based upon the plain language of that contractual preamble, Than knew he was agreeing to make the payments for the outstanding compensation as part of the new agreement between the parties.  Thus, View is liable to Lesniak for the amounts specified in the March 19, 2001 letter contract.

B.

View's defense to this breach of contract action, and the basis for its counterclaim, is that Lesniak failed to live up to the View's expectations.  View's discontent with Lesniak's performance, however, does not amount to a breach of contract on Lesniak's part.

View has not identified an obligation Lesniak owed that Lesniak has failed to meet.  The elements constituting a *prima facie* case for breach of contract must be stated in the complaint or counterclaim.  *See, e.g., Waterfront Guard Assoc. v. Amstar Corp.*, 363 F. Supp. 1026, 1030 (D. Md. 1973).  To withstand a motion for summary judgment, the *prima facie* case must be supported with sufficient evidence.  View's counterclaim asserts that Lesniak "failed to perform its responsibilities under the consulting agreement" and that "[i]n particular, Plaintiff promised but failed to develop business opportunities with ADT, a major market for security systems." (Countercl. ¶¶ 23-24.)  No

---

[2] I note, however, that none of the extrinsic evidence presented by View would alter my view that Lesniak is entitled to summary judgment on the question of liability.  Than's testimony that he signed only the bottom half of the second page is not only an untenable explanation, but is belied by other testimony in which Than states that "[p]ayroll-wise I signed documents where I owe the guy some money and I owe him shares." (*See* Than Dep., Pl.'s Mem. Ex. C, at 77.)  The brief correspondence between Lesniak and Than discussing future terms without discussing outstanding compensation (Def.'s Opp'n Ex. D) does nothing to change the fact Than signed a final document which addressed both items.  This point is driven home by the fact that the 2000 agreement drafted by View, like the March 19, 2001 contract drafted by Lesniak, included a section specifying outstanding compensation for 1999 preceding the section establishing the new terms for 2000. (*See* Compl. Ex. A.)

part of any agreement between the parties mentions ADT or making sales to any particular company. While Lesniak had an obligation to perform the "sales, marketing, management consulting and business development services" in good faith, the only allegation of a breach in View's counterclaim is that plaintiff failed to develop business opportunities with ADT.   Lesniak was not obligated by the contract to develop business specifically with ADT.

View asserts that Lesniak made oral promises in addition to the promises agreed to in writing. Bruce Lesniak previously held a position with ADT, and it was View's expectation that Lesniak would be able to use that connection to place business with his former employer. (Than Dep., Pl.'s Mem. Ex. C, at 30-31.)  This expectation, however, was never made part of the contract between the two parties.  Even if Lesniak made oral promises regarding his ability to place business with ADT, the 1999 agreement contained an integration clause making it clear that the written agreement was the "entire agreement of the parties" and that there were "no other promises or conditions in any other agreement whether oral or written."[3]  (*See* Consulting Agreement, Pl.'s Mem. Ex. A ¶ 18.)  View's counterclaim

---

[3] Than asserts in his deposition that Lesniak's relationship with ADT has soured to the point where ADT refuses to do business with a company associated with Lesniak. (Than Dep., Pl.'s Mem. Ex. C, at 28-30.)  Even if this is an accurate statement, it does not provide View with a breach of contract claim against Lesniak.  The 1999 agreement merely states that Lesniak "has a background in marketing, business development and management for security and surveillance products." (*See* Consulting Agreement, Pl.'s Mem. Ex. A, at 1.)  The agreement does not mention the status of Lesniak's relationship with ADT, and View's complaint makes no allegation that Lesniak fraudulently or negligently misrepresented himself to acquire the contract.  Therefore, I deny a motion to compel filed by View seeking the production of documents relating to Lesniak's background and previous experience.

Likewise, I deny View's request for leave to re-open discovery to take Lesniak's deposition on liability issues.  Technically, the time allotted for the taking of depositions elapsed before View formally requested to take a timely deposition.  More importantly, View has not proffered any testimony it seeks from Lesniak that would alter the disposition of this case.

is clearly based upon a breach of the 1999 agreement. (*See* Countercl. ¶¶ 22-24). Thus, View's counterclaim fails as a matter of law.

III.

View's liability for breach of the March 19, 2001 contract has been established, but the amount of damages flowing from the breach is unclear. Before determining proper damages, I must ascertain: (1) the point in time at which the 2001 agreement between the parties terminated; and (2) the proper value of the stock owed to Lesniak. Genuine disputes of material fact exist as to these issues. Therefore, Lesniak's motion for summary judgment as to the amount of damages will be denied.

A separate order is being entered herewith.


Date: July 16, 2003                                  /s/_____
                                                     J. Frederick Motz
                                                     United States District Judge